**THIRD DIVISION
ELLINGTON, P. J.,
DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 10, 2015**

# In the Court of Appeals of Georgia

A15A0958. SMITH et al. v. MITCHELL COUNTY, GA.

MCFADDEN, Judge.

This appeal arises from a superior court's final decree adopting the findings of a special master in a boundary line dispute. The appellants challenge the lack of an evidentiary hearing by the special master; however, they waived such a hearing. The appellants also challenge the sufficiency of the evidence supporting the trial court's final decree; however, the record reveals not only that the "any evidence" standard of review has been met, but that the evidence presented creates no genuine issue of material fact. The appellants further argue that the matter should have been submitted to a jury; but because there was no genuine issue of material fact, submission to a jury was not required. Accordingly, we affirm.

The record shows that Mitchell County, Georgia filed a petition to quiet title against all the world as to a tract of land containing approximately 16.7 acres. The petition alleged a boundary line dispute between Mitchell County and defendants Shirley and Linda Smith, owners of an adjacent tract of land to the north of the Mitchell County property. The Smiths answered the petition, disputing Mitchell County's claim of prescriptive title as to the boundary line location. The dispute arose from two surveys showing different locations for the common boundary between the parties' respective properties, with Mitchell County relying on a 1991 survey prepared for its predecessor in title and the Smiths using a 2012 survey prepared for them prior to their purchase of the land north of Mitchell County's property. The trial court submitted the matter to a special master pursuant to OCGA § 23-3-63.

On April 25, 2014, the special master notified the parties that he had reviewed their pleadings and attachments thereto; requested that they provide him with complete title abstracts for the adjoining parcels, including all surveys, by May 23, 2014; and instructed them that if the matter required an evidentiary hearing, to provide him with dates in the month of June 2014 for a hearing. On April 28, 2014, Mitchell County responded to the special master's notice by providing a complete title abstract for its property. On May 5, 2014, the Smiths sent their response to the

2

special master, providing him with the complete title abstract for their property. Neither party requested an evidentiary hearing or provided dates for such a hearing in June as directed by the special master. But, thereafter, on July 8, 2014, the Smiths filed a demand for a jury trial.

Notwithstanding the jury trial demand, the special master filed his report with the trial court on July 22, 2014, stating that he had reviewed the pleadings and all evidence submitted by the parties, and had conducted an independent review of the public records on file with the clerk of court. Noting that neither party had requested an evidentiary hearing as instructed in his April 25 notice, the special master determined that the boundary line dispute could be resolved by "the public record, containing deeds and plats of surveys, combined with the complete title abstracts of each adjoining property[.]" Based on his review of the evidence, the special master concluded that Mitchell County had acquired title by prescription to the disputed area and recommended that the trial court issue a decree that fee simple title to the property belongs to Mitchell County.

The trial court found that the Smiths' jury trial demand was untimely and that there was no question of fact for a jury to decide, and therefore the trial court adopted the special master's report and entered its final decree. The court decreed that fee

simple title to the subject property belongs to Mitchell County, that any cloud upon that title from the 2012 survey cited by the Smiths be removed, and that the 1991 survey relied upon by Mitchell County be given full force and effect regarding the location of the property's northern boundary. The Smiths appeal.[1]

1. *Lack of an evidentiary hearing before the special master.*

In their first enumeration, the Smiths claim that the trial court erred in adopting the special master's report because the special master issued the report without holding a hearing. The claim is without merit. Our Supreme Court has summarized the controlling statutory scheme.

> The Quiet Title Act of 1966 (OCGA § 23-3-60 et seq.) creates an efficient, speedy and effective means of adjudicating disputed title claims, and sets out specific rules of practice and procedure with respect to an in rem quiet title action against all the world that take precedence over the Civil Practice Act when there is a conflict. The Quiet Title Act requires a trial court to appoint a special master (OCGA § 23-3-63), and requires the special master to make a report of the special master's findings to the trial court. OCGA § 23-3-66. While the quiet title statutory scheme provides that the special master, once appointed, shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the

---

[1] The Smiths appealed to the Georgia Supreme Court, which transferred the case to this court on the basis that we have jurisdiction over appeals in actions concerning the location of disputed boundary lines.

4

judge of the court, (OCGA § 23-3-66), the trial court is not divested of its overall jurisdiction of the case and its sole authority under OCGA § 23-3-67 to issue the final decree.

*Nelson v. Georgia Sheriffs Youth Homes*, 286 Ga. 192, 192-193 (686 SE2d 663) (2009) (citations and punctuation omitted).

In the instant case, before making his report to the court, the special master sent notice to the parties setting a deadline for them to request an evidentiary hearing if such a hearing was necessary. However, the Smiths did not request such a hearing, let the deadline for a hearing pass without objection, and instead simply submitted their evidence to the special master. As noted above, the special master had "complete jurisdiction" to determine the extent of Mitchell County's title and all other interests in the land. Id. Such jurisdiction included the authority to set a deadline for the parties to request a hearing. See *Boyd v. JohnGalt Holdings*, 294 Ga. 640, 643-644 (3) (755 SE2d 675) (2014) (upholding authority of special master to enter a scheduling order including deadlines for motions). As the Smiths did not request a hearing by the deadline or object to the lack of a hearing prior to the entry of the special master's order, they waived any objection to the lack of a hearing. See Id. at 644 (3). Indeed, it is well established that a party will not be heard to complain of a procedure induced by his own conduct. *In re A. A.*, ___ Ga. App. ___ (2) (Case No. A15A1221, decided

5

September 28, 2015); *Affatato v. Considine*, 305 Ga. App. 755, 758 (1) (700 SE2d 717) (2010).

Moreover, the Smiths have not identified any further evidence that they would have presented had an evidentiary hearing been held before the special master. The record plainly shows that the special master considered all the evidence submitted by the parties, determined that the matter could be resolved without a hearing, and fully complied with the statutory mandate that "in making his decision, 'the master shall examine the petition, plat, and all documents filed therewith and may require other evidence to be filed, including, but not limited to, an abstract of title.'" *Cernonok v. Kane*, 280 Ga. 272, 274 (4) (627 SE2d 14) (2006) (quoting OCGA § 23-3-64). Under these circumstances, not only did the Smiths waive the opportunity to have an oral hearing before the special master, but they also were not prejudiced since they were given notice and an opportunity to respond to the petition. See generally *Mitchell v. 3280 Peachtree 1, LLC*, 285 Ga. 576 (1) (678 SE2d 880) (2009) (no reversible error in failing to hold oral hearing on motion to dismiss appeal where opposing party was given notice and opportunity to respond to the motion); *Bell v. Waffle House*, 331 Ga. App. 443, 446 (771 SE2d 132) (2015) (finding that appellant who received notice and opportunity to respond to request for attorney fees waived the right to a hearing by

6

failing to request such a hearing in his written response and by raising only an issue that did not require a hearing); *Jacobsen v. Muller*, 181 Ga. App. 382, 383 (2) (352 SE2d 604) (1986) (appellant given opportunity to request oral hearing on motion for summary judgment but failed to avail herself of that opportunity). "To hold otherwise would not be in the interest of judicial economy and would be contrary to the underlying policy behind the statute - that of providing an efficient, speedy and effective means to settle these disputes." *Griffeth v. Griffin*, 245 Ga. App. 619, 620 (538 SE2d 521) (2000) (involving an untimely jury trial demand in quiet title case).

2. *Sufficiency of the evidence.*

The Smiths' second enumeration of error challenges the sufficiency of the evidence supporting the special master's report and the trial court's adoption of it. "In an action to quiet title brought under OCGA § 23-3-60 et seq., the findings of the [s]pecial [m]aster [which are] adopted by the trial court will be upheld unless clearly erroneous. Therefore, if there is any evidence supporting the judgment of the trial court, it will not be disturbed." *Cernonok*, supra at 273 (1) (citations and punctuation omitted). The judgment of the trial court in this case is not clearly erroneous.

The evidence shows that in 2001, Mitchell County acquired 16.7 acres of land via a warranty deed from Talmadge Edwards, who had acquired the property in 1962.

7

The deed more particularly described the tract of land according to the metes and bounds contained in the plat of survey prepared by registered surveyor Larry Grogan in 1991. That survey identified iron pins that were found to establish the northern boundary of the property. In connection with his 2001 sale of the property to Mitchell County, Edwards executed an affidavit of possession that was recorded in the county deed book. In his affidavit, Edwards swore that he had continuously occupied the property described in the 1991 Grogan survey for 39 years; that no other person had occupied or claimed any part of the property adversely to him during that time; that his possession of the property had been open, notorious, continuous, exclusive and uninterrupted, as evidenced by the erection of houses and other buildings, the clearing and maintaining of the land, and the paying of taxes on the property.

In a March 2012 affidavit, Bennett Adams, who was the county administrator when Mitchell County acquired the property, averred that he was familiar with the history of possession of the property and that its northern boundary extends to the line indicated by the county deed. Adams further swore that Mitchell County has continuously used and occupied the property for more than 10 years and that its possession has been open, notorious, continuous, exclusive and uninterrupted. As evidence of such possession, Adams stated that he had overseen the construction of

8

a county park on the property, and since the initial construction in 2003, the county has maintained the park for public use.

In June 2012, appellants Shirley and Linda Smith acquired land just north of the Mitchell County property via a warranty deed. The deed described the property as shown in a plat of survey prepared by registered surveyor Larry Burnsed in January 2012. That survey noted the northern boundary line of the Mitchell County property as set forth in the Mitchell County deed and the Edwards affidavit of possession, and indicated that the iron pins establishing that line had been found. Nevertheless, the 2012 Burnsed survey map set that boundary line further south so that the Smiths' property encompassed all of a lot identified as Lot 139.

The Smiths rely on the boundary line shown on the Burnsed survey map. But as indicated in the special master's report, that purported new boundary line location was contradicted by the description of the property on the survey itself, which indicated that the parcel encompassed only "part of lot[] 139." Likewise, the warranty deed conveying the property to the Smiths also described the parcel of land as only including "part of Lot[] 139." In fact, that description is actually consistent with the northern boundary line of the Mitchell County property established by the 1991

Grogan survey, which shows that only part of Lot 139 - not all of it - is included in the Smiths' property.

We need not address whether a factfinder would have been authorized to credit the purported boundary line shown on the Burnsed survey map. Based on the evidence, the special master correctly concluded that Mitchell County had obtained title by prescription to the disputed property. "Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law." OCGA § 44-5-160. To give rise to prescriptive title, possession (1) must be in the right of the possessor and not another, (2) must not have originated in fraud, (3) must be public, continuous, exclusive, uninterrupted and peaceable; and (4) must be accompanied by a claim of right. OCGA § 44-5-161 (a). Possession of real property under written evidence of title in conformance with these requirements for a period of seven years shall confer good title by prescription to the property. OCGA § 44-5-164.

The evidence shows as a matter of law that Mitchell County has possessed the property in question under written evidence of title for more than seven years. That evidence of title includes the northern boundary of the property established by the warranty deed, the 1991 survey, the Edwards affidavit of possession, and the Bennett

10

affidavit. Moreover, the evidence shows that Mitchell County's possession during that period has been public, continuous and exclusive, and has otherwise fully conformed with the requirements of OCGA § 44-5-161. Moreover, the Smiths have not filed affidavits or pointed to any other evidence creating a genuine question of fact as to Mitchell County's prescriptive title. Because the evidence establishes as a matter of law that Mitchell County held prescriptive title to the property, the special master's finding is correct and the trial court's final decree adopting the special master's report is, per force, not clearly erroneous. Accordingly, we will not disturb the final decree.

3. *Jury trial demand.*

Although not set forth as a separate enumeration of error, in the argument section of their brief, the Smiths appear to make the additional claim that the trial court erred in failing to grant their demand for a jury trial. As provided by OCGA § 23-3-66, "any party to [a quiet title] proceeding may demand a trial by a jury of any question of fact[.]" Such a demand is timely if it is made before the case is heard by the special master. *Addison v. Reece*, 263 Ga. 631, 632 (1) (436 SE2d 663) (1993). In this case, as discussed above, there was no oral hearing before the special master because the parties waived it. The Smiths then filed their jury trial demand after the

11

parties had submitted all their evidence to the special master and the deadline for an oral hearing had passed, but before the special master filed his final report. Mitchell County argues that the jury trial demand was untimely under these circumstances. However, we need not determine that issue because even assuming for purposes of this appeal that the demand was timely, "the question for decision is whether the evidence raised a genuine issue of material fact. If there were no genuine issues of material fact to be resolved, it was not error for the special master to apply the law to the facts of the case." *Paul v. Keene*, 272 Ga. 357, 358 (529 SE2d 135) (2000) (citations and punctuation omitted) See also *Sacks v. Martin*, 284 Ga. 712, 715 (2) (670 SE2d 417) (2008) (where no question of fact exists, "the failure to provide a jury trial, even if timely requested, was not error").

Here, as discussed above in Division 2, Mitchell County provided ample evidence supporting the special master's conclusion that Mitchell County had prescriptive title to the property in question; and the Smiths presented no affidavits or any other evidence creating a genuine issue of material fact as to Mitchell County's prescriptive title to the property. "Where, as here, the evidence [does not create a genuine issue of material fact], the question of which party has superior title is not to be submitted to a jury. It follows that, notwithstanding [a] timely demand for a jury

12

trial, there was no error in failing to submit plaintiff's claim of superior prescriptive title to a jury." *Davis v. Merritt*, 265 Ga. 160 (1) (454 SE2d 515) (1995) (citation and punctuation omitted).

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur.*